[Civil No. 4419. Filed December 8, 1941.]

[119 Pac. (2d) 941.]

JOHN W. RAY, Appellant, v. GEORGE FRYE, JOHN A. FOOTE, and CHARLES H. FIELDS, Constituting the Board of Supervisors of Maricopa County, State of Arizona, and JAMES DE-SOUZA, Clerk of Said Board, Appellees.

Mr. John W. Ray, *in propria persona.*

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellees.

ROSS, J.—The plaintiff, John W. Ray, brought this action of *mandamus* to compel the defendants, constituting the Board of Supervisors of Maricopa County, to make, execute and deliver to him, as the highest bidder for cash, a deed to Lots 1, 2 and 3, Block 2, Churchill Addition to the City of Phoenix. Issues were formed and a trial had resulting in a judgment against plaintiff, who has appealed.

On June 24, 1940, the State of Arizona acquired the tax title to such lots through a deed from the Treasurer of Maricopa County for nonpayment of taxes by the owner, Hattie L. Mosher. Section 73–838, Arizona Code 1939, provides that the board of supervisors, on or before the first Monday of November in each year, shall make a list of real property held by the state under tax title and advertise the same for sale at private sale at the office of the board. Section 73–839, so far as material, reads:

"The board of supervisors may, after such advertisement, sell such real estate to the highest bidder for cash, and upon such sale shall execute and deliver to the purchaser, at his cost, a deed conveying to him the title of the state in and to the tract so purchased."

After the advertisement was completed and on March 4, 1941, the plaintiff, as the holder of a certificate of purchase under a judgment and execution in plaintiff's favor at a sheriff's sale of said lots, submitted to the board of supervisors the following proposition of purchase:

" . . . I propose and offer to pay for a state tax deed for the three lots the sum of Nine Thousand ($9,000.00). You understand that in making this offer I am in no way waiving any objection I may have as to any proceedings to assess a tax against the lots for any years, or any proceeding had to sell same, nor waive any action by any authority to this claim of taxes due on such lots. I am leaving all that out and proposing to pay the above sum in compromise and settlement of taxes that may be demanded as due the State, the County and School District and making this offer as a purchaser of the right and title of H. L. Mosher under a decree and sheriff's sale. May I remind you of these facts: The records of the Treasurer's office show a pretended sale in 1932 and another in 1938 by an entry on some book there of these words, 'sold to the state' and this entry was made by a clerk in the treasurers after the date of the advertised sale,

and without any authority from any legal source so to do; also the fact that these lots were sold by the sheriff on decree and execution to the American Surety Company of New York and redeemed and deed made to the so-called redemptioner (which is in the sheriff*s* office now) and that the purchase or redemption money was paid over to the American Surety Company and was not applied on any claimed delinquent taxes, presumably because no taxes were due; also that I hold a sheriff*s* certificate of purchase of these lots dated September 17, 1940, given me on a statement to the sheriff that no taxes were due on these lots; also to the fact, well known, that all these years H. L. Mosher has now and had other property in this county, both real and personal, on which there were no mortgage or other liens, save deficiency judgment liens of general creditors, out of which all sums due as taxes from H. L. Mosher could have been coerced and realized. May I also call your attention to the fairly recent opinion of our State Supreme Court that penalties added to delinquent taxes were not taxes or a charge against the property, but was only a charge against the owner for his neglect to pay and no lien exists against the property for these penalties. That opinion cuts a very large slice off what you consider the sum due on these lots.

"Now, I don't desire to litigate any one or all these questions or any others that may arise, nor do I desire to waive any objection or defense against any claim of taxes, in case litigation cannot be avoided.

"I will be in position to comply with this offer soon.
"Respectfully
"John W. Ray
"1612 East Polk Street."

■■ The plaintiff's offer to purchase the lots as a redemptioner from the tax sales came too late. When the property was deeded to the state, the consideration therefor was the past-due and delinquent taxes. By virtue of the deed, the state became the owner of the property, free of taxes. But, if it should

344

be treated as an offer to redeem, it does not comply with the statute. Section 73–823.

 We do not think plaintiff a bidder in conformity with section 73–839. While he offers $9,000 for the lots, he reserves the right to object to any of the taxes laid against them. He then states that the offer is "in compromise and settlement of taxes," etc. This is not an offer to purchase the lots, as is with no come back; it is a conditional offer. It left the board to speculate what was meant by "a pretended sale in 1932, and another in 1938," referring to tax sales; also, as to what was meant by the reference to a sheriff's sale of lots to the American Surety Company; also, sale to plaintiff by the sheriff "on a statement to the sheriff that no taxes were due on these lots" in September, 1940; also, the insinuation that the delinquent taxpayer had other property out of which taxes on the lots should have been collected. Plaintiff conditioned these problems with the statement that he did not desire to litigate them but would if litigation could not be avoided. Under such offer the board might very reasonably have felt that a sale to plaintiff was but the beginning of a long line of litigation to clear up the propounded questions in the offer. It is elementary that an offer must be definite and certain.

"The definiteness of a contract depends upon the definiteness of the offer, for the acceptance required for a meeting of minds must be identical with the offer. An offer to buy or sell realty must be so definite and unambiguous that, upon acceptance, the nature and extent of the obligations of the parties to the agreement shall be certain, or of such certainty that the intention of the parties can be collected by fair implication. It must be complete in itself and not leave terms for future negotiation" 66 C. J. 516, § 48. See, also, Restatement of the Law of Contracts (by American Law Institute), Volume 1, section 32.

Plaintiff did not accompany his offer with the cash but said: "I will be in position to comply with this offer soon." We have no doubt that the plaintiff felt that he would *soon* be in position to take care of the bid, but his very offer negatives his ability to do so at the time he made the offer. The board was authorized by the statute to sell only for cash. No cash accompanied the offer and none has ever been tendered the board since. Certainly a tender should have been made before bringing this action, or at least contemporaneously therewith, and continued so as to insure performance of the judgment in case it went in plaintiff's favor. "A sale for cash is a sale for the money in hand." *Dazet* v. *Landry*, 21 Nev. 291, 30 Pac. 1064, 1066.

Even if the offer had been accompanied by the cash, under the statute there was no obligation on the part of the board to give plaintiff a deed until he gave the board the "costs" thereof. See section 73–839, *supra*.

It was shown at the trial that the board, after it received plaintiff's offer, had the lots appraised by competent appraisers, by whom the lots were appraised: Lot 1 at $15,000, and Lots 2 and 3 at $12,500 each. Acting as the agent of the state, we conceive it to be the board's duty to realize as much as possible for the state out of any sale it makes of this kind of property. The language of the statute is "The board of supervisors *may* . . . sell," etc. This does not mean that the board must accept the first highest bidder for cash; it means that the sale shall not be made to any except the highest bidder, but it leaves it up to the board to invite others to bid, or at least to hold open the sale until a fair and reasonable bid has been received.

In this very case the board's answer shows it has been offered $17,500 for the lots since plaintiff's

offer. Section 73–840 empowers the board, after the state has acquired tax title to the property, to bring an action in the name of the state to quiet title against persons occupying the same adversely to the state's title. The county attorney, under the direction of the board of supervisors, has instituted such an action as to these lots. It is apparent that the purpose of said action is to clear the title and thereby enhance the market value of the property, as well as increase the state's chance to sell at a higher price, and we do not think it was intended to prevent the board from taking such step by any intervening offer to purchase.

For the various reasons given above, the judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.